IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOANN WAID, LENNIS L. WAID, et al., ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | Case No. 2:19-CV-00647-KOB |
| ) | |
| MISSION COAL COMPANY, LLC, et al., ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Appellants JoAnn Waid, Lennis L. Waid, and other Waid Claimants' ("Waid Claimants") "Motion to Stay Pending Appeal." (Doc. 5). This action originated in the Bankruptcy Court, in which Debtor Mission Coal Company, LLC, and its debtor affiliates (collectively "Mission Coal") filed for Chapter 11 bankruptcy. On April 15, 2019, the Bankruptcy Court entered an order approving the sale of the acquired assets free and clear of claims, liens, interests and encumbrances; approving the assumption and assignment of certain executory contracts and unexpired leases; and granting related relief. (Doc. 1-2). That same day, the Bankruptcy Court also entered an order confirming the Fourth Amended Chapter 11 Plan of Mission Coal. (Doc. 1-3). The Waid Claimants then appealed both orders to this court, and now move this court to stay the effect of the Bankruptcy Court's orders while the appeal is pending. For the reasons discussed below, the court will DENY the motion to stay pending appeal.

1

**I. Background**

The current action stems from two underlying actions: the state court action and the bankruptcy court action. On September 22, 2004, the Waid Claimants filed a lawsuit in the Circuit Court of Jefferson County, Alabama. In this state court action, the Waid Claimants alleged that Mission Coal's mining operations and the Concord Coal Preparation Plant caused airborne contaminants or particulates to be released into the air and onto the Waid Claimants' real and personal property, causing damage.

The parties to that action subsequently entered into a settlement agreement, which the state court approved on April 12, 2017. The settlement provided for Mission Coal to make monthly payments totaling $4,250,000.00, with the final payment due on December 31, 2019. The amount of each payment is determined by the coal production from the Concord Coal Preparation Plant each month until the total amount of the monthly payments equaled a set amount for each year. In return, Mission Coal received 225 conditional, revocable easements that allowed Mission Coal to release airborne particulates or contaminants into the air and onto the Waid Claimants' real and personal property. A default in the payments, after notice and an opportunity to cure the default, would nullify and void the easements. The easements noted that they will "automatically cease and terminate, be deemed null and void, and be of no further force and effect if a default by the Grantees occurs . . . . [If Grantees default,] all of the provisions of this Easement and Release above shall cease and terminate, be null and void, and be of no further force and effect." (Doc. 5-3 at 2).

The state court's Amended Final Order incorporated the settlement agreement into the order. The order included the following language regarding a default on payments:

> Per the Parties' settlement, if the Defendants do not timely make a payment or fail to make a payment pursuant to the terms of the Settlement Agreement, then, after

> reasonable notice and an opportunity to cure, then the Waid Plaintiffs . . . shall have the unilateral right to file an affidavit with the Office of the Judge of Probate of Jefferson County, Bessemer Division certifying that the Defendants' default has occurred and is continuing, in which event, all of the provisions of the Easements for the Waid Plaintiffs shall cease and terminate, be null and void, and be of no further force or effect. . . . The Parties agree that if the Easements are declared or determined to be null and void and be of no further force or effect because of a default by the Defendants, that part shall be excluded from the Settlement Agreement, but the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the said Easements shall be deemed not to be a part of the Settlement Agreement.

(Doc. 5-1 at 5). The Amended Final Order was also filed in the Probate Court of Jefferson County, Alabama, to give notice to the world that the easements could be revoked upon default.

On October 14, 2018, Mission Coal voluntarily filed for Chapter 11 bankruptcy. (Br. Doc. 1).[1]

In 2018,[2] Mission Coal failed to make payments totaling at least $320,059.03. As of March 1, 2019, Mission Coal is in default for failing to make payments totaling $820,059.03. Further, the settlement agreement requires Mission Coal to make additional payments until it has paid $500,000.00 in 2019. So, Mission Coal must pay $1,320,059.03 under the settlement agreement by December 31, 2019.

On April 15, 2019, the Bankruptcy Court entered the Sale Order authorizing the sale of nearly all Mission Coal's assets to Murray Metallurgical Coal Holdings, LLC and its affiliates. This sale included the sale of the easements on the Waid Claimants' land. The Bankruptcy Court also confirmed Mission Coal's Fourth Amended Joint Chapter 11 Plan ("the Plan"). Mission

---

[1] The court will refer to docket entries in the corresponding bankruptcy case, Case No. 2:18-04177-TOM11, as "Br. Doc."

[2] While the parties did not include the month when Mission Coal defaulted on its payments to the Waid Claimants, the court assumes Mission Coal defaulted prior to filing for bankruptcy based on Mission Coal's bankruptcy petition, which lists the Waid Claimants as creditors with a $1,200,00.00 unsecured litigation claim. (Br. Doc. 1 at 7).

3

Coal claims that the "[s]ale to Murray was a critical component, indeed the *sine qua non*, of the Plan." (Doc. 15 at 6).

On April 26, 2019, the Waid Claimants filed a notice of appeal from the Order Approving Sale and the Order Confirming the Fourth Amended Chapter 11 Plan. That same day, they also filed a non-emergency motion in the Bankruptcy Court seeking a stay of the orders pending the appeal.

On April 30, 2019, Mission Coal closed the sale to Murray. Pursuant to the sale agreement, Mission Coal sold its easements to Murray Oak Grove, LLC, free and clear of all liens, claims, and encumbrances. Because the sale closed, the Plan Effective Date occurred on April 30, 2019. Additionally, the Waid Claimants' notice of appeal was docketed in this court on April 30, 2019. (Doc. 1).

On May 3, 2019, the transfer of the easements was recorded in the Probate Court of Jefferson County, Alabama.

On May 8, 2019, the Bankruptcy Court held a hearing on the motion to stay pending appeal. The Bankruptcy Court denied the motion, finding that (1) the Waid Claimants failed to show they were likely to succeed on the merits of their appeal; (2) the Waid Claimants failed to show that they would suffer irreparable harm without a stay; (3) the entry of a stay would be confusing and have no practical effect because the sale had been consummated; and (4) the public interest is best served by the closing of the sale and confirmation of the Plan.

Following the Bankruptcy Court's denial of the motion to stay, the Waid Claimants next moved this court for a stay pending the appeal in this court on May 23, 2019, which is now before this court.

**II. Standard of Review**

A stay pending appeal is akin to a preliminary injunction. *See Matter of Forth-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997) ("These factors mirror the factors to be considered in ruling on an application for preliminary injunction, in which context we have more fully explained how the factors are to be applied and balanced."). The Eleventh Circuit explained the standard:

> A stay pending appeal is an "extraordinary remedy" and the party seeking it must show: "(1) a substantial likelihood that [the movant] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest."

*In re Woide*, 730 F. App'x 731, 737 (11th Cir. 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000)), *cert. denied sub nom.*, *Woide v. Fed. Nat'l Mortg. Ass'n*, 139 S. Ct. 481 (2018). The party seeking the stay bears the burden of proving each element, "but the court may give greater weight to any of the elements in its discretion depending upon the circumstances of the case." *In re Powers*, No. 15-03267-JJR13, 2018 WL 5255295, at *3 (N.D. Ala. Oct. 15, 2018).

Generally, the party must first move the bankruptcy court to stay the judgment, order, or decree. Fed. R. Bankr. P. 8007(a)(1). But, the party can instead directly move the district court hearing the case on appeal to stay the judgment, order, or decree under one of two circumstances: (1) the party "show[s] that moving first in the bankruptcy court would be impracticable," or (2) "if a motion was made in the bankruptcy court, [the party] either state[s] that the court has not yet ruled upon the motion, or state[s] that the court has ruled and set out any reasons given for the ruling." *Id.* at 8007(b)(2).

In this case, Mission Coal contends that, while the Waid Claimants moved the Bankruptcy Court for a stay, that motion to stay was different from the motion to stay filed before this court. Mission Coal alleged that the Waid Claimants sought a stay of the initial transfer of property from the Bankruptcy Court, but a stay of all future transfers from this court.

The court reviews the Bankruptcy Court's decision to deny the stay for abuse of discretion. *See In re Land Ventures for 2, LLC*, No. 2:10cv839-MHT, 2010 WL 4176121, at *1 (M.D. Ala. Oct. 18, 2010) ("A stay pending appeal is generally a question for the bankruptcy judge whose decision should be reviewed for abuse of discretion."); *In re Forest Oaks, L.L.C.*, No. 10-00178-CB-M, 2010 WL 1904340, at *3 (S.D. Ala. May 10, 2010) ("Most courts have interpreted [Rule 8007] to mean that a stay pending appeal is generally a question for the bankruptcy judge whose decision should be reviewed for abuse of discretion."). So, the court will now consider whether Judge Mitchell of the Bankruptcy Court abused her discretion in denying the Waid Claimants' motion to stay pending appeal.

**III. Discussion**

The Waid Claimants seek extraordinary relief in moving for a stay of the Order Approving Sale and the Order Confirming the Fourth Amended Chapter 11 Plan pending their appeal. Specifically, the Waid Claimants seek "to prevent any further transfers or attempts to transfer the easements at issue in this case." (Doc. 5 at 1).

Before the court can reach the four-part test to determine if the stay pending appeal is appropriate, the court must first determine if the motion is procedurally proper. Mission Coal contends that the appeal is procedurally improper because the Waid Claimants did not first seek this stay in the Bankruptcy Court. Pursuant to Rule 8007, "[o]rdinarily, a party must move first

in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1).

Prior to filing a motion to stay pending appeal in this court, the Waid Appellants did seek a stay from the Bankruptcy Court. They sought a stay of the Order Approving Sale and the Order Confirming the Fourth Amended Chapter 11 Plan "to the extent that those Orders affect the substantive rights of the Waid Claimants, including any attempt to sell the subject property free and clear of the right of the Waid Claimants to revoke the Easements referred to in the Order Approving the Sale." (Br. Doc. 1356). Specifically, the Waid Claimants sought to prevent a transfer of the property free and clear of the easements.

On May 8, 2019, the Bankruptcy Court held a hearing on the motion to stay. (Doc. 15-1). At the hearing, the Waid Claimants expressly amended their request "to prevent the debtors from making any further transfer of the easements." (Doc. 15-1 at 26). So, the court finds that the Waid Claimants did seek the same stay from the Bankruptcy Court that they now seek from this court, given the Waid Claimants' amending of their request to encompass further transfers in oral argument.

Mission Coal also contends that the Waid Claimants failed to name Murray, the buyer, as an appellee in this appeal. In a bankruptcy appeal, "[n]otices of appeal in bankruptcy must name 'all parties to the judgment, order, or decree appealed from.'" *In re Kmart Corp.*, 359 F.3d 866, 870 (7th Cir. 2004) (quoting Fed. R. Bankr. P. 8001(a)(2)). Rule 8003(a)(3)(A) requires the notice of appeal to conform with the official form for bankruptcy appeal, which in this case is Official Form 417A. Official Form 417A requires the appellant to name "all parties to the judgment, order, or decree appealed from."

7

First, the court must determine whether Murray is a party to the underlying orders, and therefore required to be named at all. This court can find no law pertaining to when an entity or individual is a party to an *order*. But § 1109 of the Bankruptcy Code explains when an entity or individual is a party in interest to the bankruptcy case such that it has a right to be heard: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Murray is not a debtor, a trustee, a creditor, an equity security holder, or a committee. However, the list in § 1109 is not exhaustive, so "[b]ankruptcy courts 'must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.'" *In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir. 1993) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). This court infers that the Bankruptcy Court found Murray to be such a party in interest because the Bankruptcy Court granted Murray's counsel's motions to appear pro hac vice to represent Murray in the bankruptcy action. (Br. Docs. 1276–1277).

Second, the court must determine whether the Waid Claimants named Murray in the notice of appeal. Murray is not named on this court's docket sheet or in the Waid Claimants' notice of appeal. (Doc. 1). The 2014 amendments to the Federal Rules of Bankruptcy Procedure eliminated the clause from Rule 8002 directly requiring the appellant to file a notice of appeal that "contain[s] the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys." But at least one court that has interpreted the newly amended Rules 8002 and 8003 found that listing "only the parties to the main bankruptcy appeal" and *not* "the parties in the contemplated adversary appeal" was a

8

failure to substantially comply with Official Form 417A. *See In re Dorsey v. U.S. Dep't of Educ.*, 870 F.3d 359, 363 (5th Cir. 2017).

But Federal Rule of Bankruptcy Procedure 8003 also provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the district court . . . to act as it considers appropriate, including dismissing the appeal." Fed. R. Bankr. P. 8003(a)(2). The law is unsettled regarding whether a failure to comply with Rule 8003 defeats jurisdiction. *See In re Dorsey*, 870 F.3d at 363 ("Courts are divided over whether technical failures to follow the requirements of Rule 8003 must defeat jurisdiction."); *see also Strickland & Davis Intern'l, Inc. v. Shepard*, No. 5:12-mc-2201-KOB, 2014 WL 2768810 at *5 (N.D. Ala. June 18, 2014) (Bowdre, C.J.) (noting that failure to substantially conform with the Official Form "by itself[] may not have warranted dismissal of the appeal").

The Bankruptcy Court did serve notice of the appeal on Murray on April 30, 2019. (Br. Doc. 1364). This appeal is docketed under the title of the bankruptcy case and under the title of the adversary proceeding to identify the appellant. That this docket sheet does not show Murray's name does not demonstrate that Murray had no notice of the appeal. On the contrary, Murray had notice of the appeal because the Bankruptcy Court served notice on it on April 30, 2019, *and* because an attorney for Murray participated at the hearing on the motion to stay before the Bankruptcy Court on May 8, 2019. So, because Murray had notice of the appeal, the Waid Claimants' failure to specifically name Murray as a party in conformity with the Official Form does not by itself warrant dismissal.

Because it has determined that the motion to stay is procedurally *proper*, the court will now discuss each element of the four-part test in turn to determine if the stay is *appropriate*.

9

### a. Substantial likelihood of success on the merits

First, the court considers whether the Waid Claimants established that they have a substantial likelihood of success on the merits in the underlying dispute. The Bankruptcy Court found that the Waid Claimants were not likely to succeed on the merits of the appeal because "based on [the court's] reasoning of a 363 sale, and this Court's broad authority to confirm a plan, the movant has failed to demonstrate a likelihood of success on appeal as to either of those orders from which it has filed a notice of appeal." (Doc. 15-1 at 33).

Mission Coal argues that the Waid Claimants' appeal cannot succeed on the merits—regardless of their arguments regarding the substance of the orders—because the appeal is statutorily moot. Statutory mootness derives from § 363(m) of the Bankruptcy Code:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

The Bankruptcy Court expressly noted in its Order Approving Sale that Murray was a good faith purchaser. (Doc. 1-2 at 7–8, 27). As such, Murray "is entitled to all of the protections afforded by the Bankruptcy Code section 363(m)." (*Id.* at 27). So, because Murray is a good faith purchaser, an appeal of an order authorizing the sale of property is statutorily moot unless "such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).

The court is troubled by the timeline in this case. On April 15, 2019, the Bankruptcy Court entered its Order Approving Sale. (Doc. 1-2; Br. Doc. 1322). On April 26, 2019, the Waid Claimants filed their notice of appeal in the Bankruptcy Court of the Order Approving Sale and the Plan and their motion to stay pending appeal. (Br. Docs. 1355–56). On April 30, 2019, the

sale was closed, and on May 3, 2019, the easements were recorded in the probate court. On May 8, 2019, the Bankruptcy Court held a hearing on the motion to stay pending appeal, which the court ultimately denied.

So, while the Waid Claimants filed their notice of appeal and motion to stay *before* the sale was consummated, the Bankruptcy Court did not rule on the motion to stay until *after* the sale was consummated. The Waid Claimants did not file their motion to stay as an emergency motion, despite the fact that the sale was to close four days after they filed their motion. *See* Fed. R. Bankr. P. 8013(d)(1) ("When a movant requests expedited action on a motion because irreparable harm would occur during the time needed to consider a response, the movant *must* insert the word 'Emergency' before the title of the motion." (emphasis added)). Because the Waid Claimants did not seek expedited review, by the time the Bankruptcy Court heard the motion to stay the order, that court would have been forced to unwind the sale if it granted the motion.

At this point, if the Waid Claimants successfully appealed the Bankruptcy Court's Order Approving Sale and Order Confirming Plan, this court would also necessarily have to unwind the sale. This scenario is exactly what § 363(m) prevents: the unwinding of a sale by an appeal after the sale has been consummated. Section 363(m) does contain a limitation on finding such an appeal moot: "unless such authorization *and* such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m) (emphasis added). Here, the Waid Claimants do seek a stay of the *authorization* pending the appeal. But the *sale* has already occurred. So, even if the court were to grant the stay, the authorization *and* the sale could not be stayed pending the appeal. While the Waid Claimants seek to stay *future* sales, § 363(m) requires a stay of the *initial* sale, which has already

11

been consummated. And, if the appeal is moot, the Waid Claimants cannot show a substantial likelihood of success on the merits.

The Waid Claimants argue that their appeal is not statutorily moot because Murray was not a good faith purchaser as it knew about their adverse interest in the property transferred. Various courts have held that "section 363(m) 'limits appellate jurisdiction over an unstayed sale order issued by a bankruptcy court to the narrow issue of whether the property was sold to a good faith purchaser.'" *In re Cooper*, 592 B.R. 469, 478 (S.D.N.Y. 2018) (quoting *In re Motors Liquidation Co.*, 428 B.R. 43, 53 (S.D.N.Y. 2010)); *accord In re TLFO, LLC*, 572 B.R. 391, 433 (S.D. Fla. 2016) ("However, because the Defendants now assert that TransUnion-TRADS did not act in good faith, the Court will once again analyze TransUnion-TRADS's status as a good faith purchaser."); *see also* James Lockhart, Annotation, *Construction and Application of 11 U.S.C.A. § 363(m), Protecting Good Faith Purchaser or Lessee Under Bankruptcy Code—Status as "Good Faith" Purchaser or Lessee*, 51 A.L.R. Fed. 2d 471 Art. 2 § 4 (2010) (citing cases from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits that held that an appeal is not moot under § 363(m) "insofar as the appeal seeks to challenge the good faith status of the purchaser or lessee"). So, if the Waid Claimants validly raised an argument that Murray was not a good faith purchaser, that issue would not be moot on appeal.

But Mission Coal points out that "[t]he Waid Claimants did not contest good faith basis of the sale at any time prior to the closing of the Sale." (Doc. 15 at 14). Courts widely recognize that while "a challenge to the purchaser's good-faith status itself is not mooted by sale if timely raised, . . . 'such a challenge may not be raised for the first time on appeal to the district court.'" *In re Ondova Ltd. Co.*, 620 F. App'x 290, 292 (5th Cir. 2015) (quoting *In re The Watch Ltd.*, 257 F. App'x 748, 750 (5th Cir. 2007)) (footnotes omitted); *accord Lind v. Spacone*, BAP No. EC-

18-1271-TaBS, 2019 WL 2950167, at *3 (B.A.P. 9th Cir. July 8, 2019) ("But Debtor never raised this assertion of a lack of good faith with the bankruptcy court; we treat it as waived and see no exceptional circumstances that warrant considering the matter for the time time on appeal."). If the issue was not raised before the bankruptcy court, it cannot be raised for the first time on appeal to the district court. *See Worldwide Web Sys., Inc. v. Feltman*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("[B]ecause [appellant] did not raise this issue in his . . . motion to the bankruptcy court, sitting as a trial court, he waived it and we will not address it on appeal.").

The Waid Claimants raised this good faith purchaser argument for the first time in their reply brief to their motion to stay pending appeal before the Bankruptcy Court. (Br. Doc. 1399). The Waid Claimants failed to raise this argument before the Order Approving Sale and before the sale was consummated. They raised this argument for the first time in their reply to their motion to stay pending appeal *after* filing their notice of appeal. As such, they waived their argument regarding whether Murray is a good faith purchaser.

Because the Waid Claimants waived their argument regarding whether Murray is a good faith purchaser, the court will accept the Bankruptcy Court's Order Approving Sale finding that Murray was a good faith purchaser. As such, Murray is entitled to the protections provided under § 363(m). Pursuant to § 363(m), an appeal of an order authorizing the sale of property is statutorily moot unless "such authorization and such sale or lease were stayed pending appeal." The Waid Claimants raise no argument—other than their failed good faith purchaser argument— why their appeal is not statutorily moot. The Waid Claimants cannot clear the § 363(m) hurdle that their appeal is statutorily moot, so the court need not address the Waid Claimants' other arguments regarding success on the merits of the appeal. Because they cannot show why their appeal is not statutorily moot, the Waid Claimants cannot meet their burden of proving

13

substantial likelihood of success on the merits of the appeal under any argument based on the substance of the orders.

While the court could end its analysis here because the Waid Claimants' appeal is statutorily moot, in the interest of thoroughly reviewing the motion to stay, the court will also consider the other requirements for a stay.

### b. Substantial risk of irreparable harm

Second, the court considers whether the Waid Claimants established that they have a substantial risk of suffering irreparable harm if the court does not grant the stay. The Bankruptcy Court held that the Waid Claimants failed to demonstrate a substantial risk of irreparable harm; any harm already occurred on the closing of the sale and effective date of the Plan, which have both already passed. The Bankruptcy Court also doubted what further harm could come to the Claimants now that the sale has been consummated.

The Waid Claimants allege that they may suffer irreparable harm if Mission Coal and Murray unilaterally attempt to transfer the easements to a third party. (Doc. 5 at 17). They also contend that they "are threatened with the loss of contractual rights and a property interest" and "the loss of appellate rights." (*Id.* at 18).

As noted by the Supreme Court, "simply showing some 'possibility of irreparable injury' fails to satisfy th[is] factor." *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). And the Waid Claimants only provide vague, possible injuries. They make no showing that Mission Coal and Murray will attempt to transfer the easements.

To the extent that the Waid Claimants are concerned about the loss of contractual rights and property interest, the easements have already been transferred before they even filed this

appeal, so any injury has already occurred and is not dependent upon this stay. The Bankruptcy Court so stated at its hearing on the motion to stay: "Whatever harm there was[] occurred on the closing of the sale and the effective date of the plan, both of which have been accomplished, and accomplished some nine days ago." (Doc. 15-1 at 34). The court recognizes, without deciding, that the Waid Claimants may have suffered some loss of contractual rights, based on the Supreme Court's recent ruling in *Mission Product Holdings, Inc. v. Tempnology*, 139 S. Ct. 1652 (2019), although any such loss is insufficient on its own to overcome the Waid Claimants' failure to establish a substantial likelihood of success on the merits.

As for the Waid Claimants' argument that they will lose their appellate rights, "the overwhelming majority of courts, including those within the Eleventh Circuit, have recognized that possibility of mootness of an appeal 'is insufficient by itself to establish irreparable injury.'" *United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*, No. 2:16-cv-00064-RDP, 2016 WL 470815, at *9 (N.D. Ala. Feb. 8, 2016) (quoting *In re Charter Co.*, 72 B.R. 70, 72 (M.D. Fla. 1987), *aff'd* 829 F.2d 1054 (11th Cir. 1987)).

So, the Waid Claimants failed to establish that they would suffer irreparable harm if the court denies the stay.

### c. No substantial harm to any other interested persons

Third, the court considers whether the Waid Claimants established that the stay would not substantially harm any other interested persons. The Bankruptcy Court held that, because the sale had closed and the Plan had become effective, "to enter any sort of stay at this point would be confusing to all parties, and is completely unrealistic and probably would have no impact because the transactions are both accomplished at this point." (Doc. 15-1 at 34).

The Waid Claimants argue that "Mission Coal and Murray can show no substantial harm, other than the harm they knew they risked when they entered into the sale agreement." (Doc. 19 at 6). They also contend that "[t]he money owed from the Debtors and Purchaser to keep the Easements is a fraction of the total amount of consideration paid for the transaction." (Doc. 5 at 17). On the contrary, the court agrees with the Bankruptcy Court that staying a sale *after* the sale has been consummated and approved by the court would be confusing and lack any practical effect. The transfer has already been completed; staying the orders at this point would serve no purpose. And staying any further transfers would infringe upon Murray's right to freely transfer its property.

So, the Waid Claimants failed to demonstrate that the stay would not substantially harm any other interested persons.

### d. No harm to the public interest

Fourth, the Waid Claimants must establish that the stay would not harm the public interest. The Bankruptcy Court held that "the public interest is clearly, and without dispute, best served by the closing of the sale and the confirmation of the plan." (Doc. 15-1 at 35). Specifically, the sale and Plan "kept the mines open; . . . kept the miners working; . . . kept the staff in the office working; . . . allowed for businesses in the community to continue to operate, and to have businesses that they might not otherwise have without their mine operating." (*Id.*). Additionally, the public interest would be served by the payment of city, state, and county taxes as a result of the businesses continuing to operate.

The Waid Claimants maintain that the public interest "lies in making a final determination as to the Waid Claimants' rights after rejection and as to the jurisdictional and constitutional 'taking,'" as well as allowing the appellate court to address the appeal. (Doc. 5 at

16

17). The court does not posit that the Waid Claimants show no benefit to the public interest. But the benefit to the public interest to be gained by the stay pales in comparison to the harm to the public interest that would be caused by the stay.

Bankruptcy courts generally recognize a public interest "in allowing a Chapter 11 debtor an opportunity to implement its confirmed plan." *In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. 862, 879 (Bankr. M.D. Fla. 2015). And in this case, the Bankruptcy Court accurately explained the vital importance of keeping the mines open, and preserving jobs, businesses, and even tax revenue. In its Order Approving Sale, the Bankruptcy Court explained that "[t]he Debtors presented uncontroverted testimony from credible and knowledgeable witnesses that, without the sale and confirmation of a plan, the likely result would be closure of the mines." (Doc. 1-2 at 16).

This court agrees with the Bankruptcy Court regarding the public interest. In short, "[h]ere the interest does not favor a stay; it compels the denial of one." *United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*, No. 2:16-cv-00064-RDP, 2016 WL 470815, at *9 (N.D. Ala. Feb. 8, 2016) (quoting *In re Gen. Motors Corp.*, 409 B.R. 24, 33 (Bankr. S.D.N.Y. 2009)).

So, the Waid Claimants have not demonstrated that a stay would not harm the public interest.

Because the Waid Claimants failed to establish a single factor in favor of granting a stay pending appeal, the court must deny their motion to stay.

**IV. Conclusion**

For the reasons discussed above, the court will DENY the Waid Claimants' "Motion to Stay Pending Appeal." (Doc. 5). The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 24th day of July, 2019.

_/s/ Karon O. Bowdre_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE